UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
BANDALI DAHDAH,                  )
     Plaintiff,                  )
                                 )           CIVIL ACTION NO.
          v.                     )           08-11391-PBS
                                 )
PEACETIME, LLC.,                 )
WAIL KHOURY and                  )
JULIETTA KHOURY,                 )
     Defendants.                 )
```

MEMORANDUM AND ORDER

July 25, 2013

SARIS, C.D.J.

## I.  INTRODUCTION

On November 13, 2008, this action was removed to this Court
from the Middlesex Superior Court.  The crux of the claims
presented by plaintiff Bandali Dahdah ("Dahdah") center around
the expenses associated with his installation of an outdoor
swimming pool at 1 Mulberry Lane in Burlington, Massachusetts.
Dahdah sued his sister, Julietta Khoury ("Julietta") and her
husband, Wail Khoury ("Wail"), both residents of London, England,
and Peacetime, LLC,[1] claiming they had agreed to reimburse him.

After extensive litigation, on May 6, 2009, this Court
adopted the Report and Recommendation of Magistrate Judge Leo T.
Sorokin, which recommended this Court grant defendants' Motion to
Dismiss the First Amended Complaint over Dahdah's objections.[2]

---

[1]   Wail is the sole manager of Peacetime, LLC.  The
company is the owner of the property in Burlington.

[2]   Final Judgment issued in favor of the defendants on May
8, 2009.  Dahdah did not file an appeal.

The Report and Recommendation (Docket No. 69) addressed, *inter alia*, the question of claim preclusion and *res judicata* because of earlier actions concerning the same subject matter that had been litigated in England.[3]

First, with respect to Dahdah's claims against his sister Julietta, Magistrate Judge Sorokin addressed the issue of whether Dahdah's "Notice of Discontinuance" filed in the English Court constituted a "final judgment" for purposes of claim preclusion for this action.  The Notice of Discontinuance was filed in the English Court on July 24, 2008 after Dahdah had been ordered by the English Court on July 15, 2008 to pay costs to Julietta by August 8, 2008, or, failing that, the case would be dismissed with judgment for Julietta.  Magistrate Judge Sorokin discussed the differences between English Civil Procedure Rule 38.7 and Rule 41 of the Federal Rules of Civil Procedure.  On this basis, he concluded that the record did not establish that the Notice of Discontinuance constituted a final judgment for purposes of claim preclusion with respect to his claims against Julietta. Nevertheless, he concluded that judgment in favor of Dahdah's brother-in-law Wail precluded the pending claims against Julietta.

With respect to Dahdah's claims against Wail, Magistrate

---

[3]     The Report and Recommendation was revised on April 17, 2009 to correct a typographical error.  No substantive changes were made.  <u>See</u> Revised Report and Recommendation (Docket No. 73).

Judge Sorokin stated that Dahdah did not contest that his claims proceeded to a "final judgment."  Thus, the claims were precluded.

Finally, because Peacetime, LLC was a party to the settlement with Dahdah in the suit against Wail, Magistrate Judge Sorokin concluded that the company was in privity with the Wail, and thus the final judgment barred all of Dahdah's claims.[4]

More than four years after final judgment entered in this action, on July 2, 2013, Dahdah filed a Motion to Set Aside Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (Docket No. 79).  Dahdah contends that he recently received documentation from the United Kingdom Appeal Office showing that under British law, a summary judgment ruling (as he claims was the case against Wail) was <u>not</u> considered to be a final decision.  He alleges he recently discovered the British definition of final decisions because of a recent trip to the United Kingdom.

In his Memorandum in support (Docket No. 80), Dahdah argues that Magistrate Judge Sorokin was "flat out wrong" when he stated that the prior judgment barred the claims against the defendants. He also takes issue with the characterization that he had not contested that his claim against Wail proceeded to a final

---

[4]     Magistrate Judge Sorokin concluded that there was a genuine dispute of material fact such that the defendants were not entitled to judgment as a matter of law on the statute of frauds defense.

judgment.

In their Opposition (Docket No. 81), the defendants characterize Dahdah's Rule 60(b) motion as grossly untimely. They also assert that either Dahdah has made the same argument that he makes now, which was rejected by the Court, or he failed to make the argument and thus has waived it.

Next, the defendants appear to claim that Dahdah's attempt to reopen this action at this late juncture constitutes vexatious or abusive conduct. They outline the substantial litigation history in this and other courts between Dahdah and the defendants concerning the costs of the swimming pool. Notably, the defendants claim that have had to file for injunctions against Dahdah based on improper conduct or threats to the defendants, to the property, to insurers and to agents. They claim Dahdah violated an injunction in London, England, which was obtained by Wail, and as a result, Dahdah served 20 days imprisonment in April, 2011. Further, they point out e-mails sent by Dahdah that contain highly-charged language, racial epithets, and threats of violence and threats of destruction of property.[5]

---

[5]    For example, the defendants point to an e-mail from Dahdah to Wail on April 12, 2007, stating: "*You better tell your family to stay the fuck away, as I will cause bodily harm to all of them, if they are in the vicinity of my father. Like I said none of you are welcome when I am there...so tell your wife this is a warning and for her to stay the fuck away. Wail this is going to get so ugly that you better get your head out of the sand and start...call complain to whoever the fuck you want...your life will be miserable from here on out.*" The next

As an additional matter, the defendants argue that Dahdah's motion does not specify upon what subsection of Rule 60(b) he relies; however, the Court should deemed the motion to be based on "excusable neglect" under Rule 60(b).  Nevertheless, they assert that Rule 60(b) relief should not be granted in this case because Dahdah's reason for the four-year delay in filing the motion does not present circumstances showing that there was excusable neglect that would compel equitable relief.  They argue that Dahdah could have obtained the information he claims to have recently discovered in 2013 back in 2009.  Further, they argue that Dahdah conceded that there was a final judgment, although he claimed that the action in the United Kingdom had nothing to do with the swimming pool costs and thus there was no identity of causes of action for purposes of claim preclusion.

As an additional matter, the defendants contend that either Dahdah's arguments were waived, or, if Magistrate Judge Sorokin erred in his Report and Recommendation (that this Court adopted), Dahdah's recourse was to file a timely appeal.  They contend that under First Circuit law, Rule 60(b) cannot be used as a "back-door substitute for an omitted appeal."  Opposition (Docket No. 81 at 16) <u>citing</u> <u>Cotto v United States</u>, 933 F.2d 274, 277-78 (1st Cir. 1993).

---

day, Dahdah is alleged to have sent an e-mail to Wail stating: *"Trust me on that one.  After your swindling me on the real estate transaction, fine.  Fuck me some more.  One day I will get a plane to London and kill you.  You can take that to the bank. Proudly, Bandali."*  Opposition (Docket No. 81-1 at 4).

Finally, the defendants argue that Dahdah's interpretation of British law -- that decisions made on an application to strike-out summary judgment are not final decisions -- is misplaced for *res judicata* purposes.  Rather, they argue that the language of the rule addresses how an appeal should or should not be taken.[6]

On July 22, 2013, Dahdah filed a Motion for Leave to File a Reply (Docket NO. 82), along with his proposed Reply and a number of exhibits.  Among other things, he takes issue with the characterization that he did not attempt to confer with defense counsel prior to filing his Rule 60(b) motion.  He also takes issue with the defendants' personal attacks on him and the characterization of his litigation history, arguing that there are two sides to every story.  He alleges that threats were made against him, and that Wail also was the subject of criminal contempt proceedings in the United Kingdom.

Next, he contends the defendants' overstated his litigation history in their allegation that he was involved in nine (9) state court cases and five (5) federal court cases.  He claims this is untrue because the facts in the state court cases were the same as those in federal court; the cases were transferred from state court or were dismissed by the state court for

---

[6]     The defendants alleged that Practice Direction 52, Section 2A.2 states that "Decisions made on an application to strike-out or for summary judgment are not final decisions **for the purpose of determining the appropriate route of appeal"** Opposition (Docket No. 81 at 16)(emphasis in bold in original).

jurisdictional limitations.

He then explains matters involving Dahdah's personal injury case and his involvement with insurers and others. Finally, he iterates his position that there was no final judgment in the United Kingdom.

## II.  DISCUSSION

A.  <u>Plaintiff's Motion to File a Reply Brief</u>

This Court will <u>GRANT</u> Plaintiff's Motion to File a Reply Brief (Docket No. 82), and has considered the arguments contained therein.

B.  <u>The Motion to Set Aside Judgment Pursuant to Fed. R. Civ. P. 60(b)</u>

Rule 60(b) provides that: "[o]n motion and just terms, the court may relieve a party... from a "final judgment order or proceeding" based on "mistake, inadvertence, surprise, excusable neglect" (Rule 60(b)(1)), "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"(Rule 60(b)(2)), "fraud..., misrepresentation or misconduct by an opposing party" (Rule 60(b)(3)), void judgment (Rule 60(b)(4)), satisfied judgment (Rule 60(b)(5)), or "any other reason that justifies relief" (Rule 60(b)(6)).  As to the last ground, the request for relief under Rule 60(b)(6) must be based on extraordinary circumstances. See <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 864 (1988); <u>Dr. Jose S. Belaval, Inc. v. Perez-Perdomo</u>, 465 F.3d

33 (1st Cir. 2006)(citing <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 891 (1st Cir. 1997)).

Further, a motion under Rule 60(b) must be made within a reasonable time...;" Fed. R. Civ. P. 60(c)(1).  If the motion is based on subsections (1), (2), or (3) (*i.e.*, mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud), it must be made "no more than a year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. P. 60(c)(1); <u>see Dr. Jose S. Belaval, Inc.</u>, 465 F.3d at 38. The reason for the delay is "a critical factor in the excusable neglect inquiry." <u>Venegas-Hernandez v. Sonolux Records</u>, 370 F.3d 183, 187 (1st Cir. 2004).  "Ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect....'" <u>United States v. $23,000 in U.S. Currency</u>, 356 F.3d 157, 164 (1st Cir. 2004).

Rule 60(b) is considered a "vehicle for extraordinary relief," and motions attempting to utilize such a tool should be allowed only under "extraordinary circumstances." <u>Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe</u>, 257 F.3d 58, 64 (1st Cir. 2001).  A Rule 60(b) motion will only be granted when the court is persuaded that the "motion is timely; that exceptional circumstances exist favoring extraordinary relief ... and that no unfair prejudice will accrue to the opposing parties should the motion be granted." <u>Karak v.Bursaw Oil Corp.</u>, 288

8

F.3d 15, 19 (1st Cir. 2002)(citing <u>Teamsters, Chauffeurs,</u>

<u>Warehousemen & Helpers Union, Local No. 59 v. Superline Transp.</u>

<u>Co.</u>, 953 F.2d 17, 19-20 (1st cir. 1992); <u>Leopore v. Vidockler</u>,

792 F.2d 272, 274 (1st Cir. 1986)).

    Recently, the First Circuit has stated that the

excusable-neglect determination

> "is at bottom an equitable one, taking account of all
> relevant circumstances," including "the danger of
> prejudice to the [non-moving party], the length of the
> delay and its potential impact on judicial proceedings,
> the reason for the delay, including whether it was
> within the reasonable control of the movant, and
> whether the movant acted in good faith." <u>Id.</u> at 395.
> Of these factors, the reason for the delay is the most
> critical: "there still must be a satisfactory
> explanation for the late filing." <u>Graphic Commc'ns</u>
> <u>Int'l Union v. Quebecor Printing Providence, Inc.</u>, 270
> F.3d 1, 5 (1st Cir. 2001); <u>accord</u>, <u>e.g.</u>, <u>Hospital Del</u>
> <u>Maestro v. NLRB</u>, 263 F.3d 173, 175 (1st Cir. 2001)(*per
> curiam*).

<u>Abrami v. Town of Amherst, et al.</u>, No. 11-1384, at 2 (1st Cir.

2013)(unpublished opinion).

    Here, this Court will <u>DENY</u> Dahdah's Motion to Set Aside

Judgment pursuant to Fed. R. Civ. P. 60(b)(Docket No. 79),

essentially for the reasons set forth by the defendants in their

Opposition, except where noted otherwise.  Of particular

consideration is that this motion is patently untimely, having

been filed four years after final judgment entered in this case.

Dahdah's excuse -- that he recently only discovered British law

with respect to final judgments when he took a trip to the United

Kingdom -- (not that he discovered any new facts bearing on the

claims or that there was a change in law) is not sufficient and does not provide compelling circumstances to reopen this case under any provision of Rule 60(b).  Moreover, Dahdah has not shown that he could not otherwise have discovered the law with due diligence.

Further, this Court agrees with the defendants that Dahdah either had raised, or could have raised the issue in the District Court four years ago (and thus waived the issue), and that the proper recourse to challenge an adverse decision of the District Court was to file an appeal.

To be clear, this Court does not make this ruling based on Dahdah's prior litigation history or his alleged threatening conduct.  This decision is based solely on the determination that Dahdah's Rule 60(b) motion is untimely and does not present exceptional circumstances demonstrating that equitable relief is warranted.

### III.  CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1.   Plaintiff's Motion to File a Reply Brief (Docket No. 82) is ALLOWED; and

2.   Plaintiff's Motion to Set Aside Judgment pursuant to Fed. R. Civ. P. 60(b)(Docket No. 79) is DENIED with prejudice.


SO ORDERED.

/s/ Patti B. Saris
PATTI B. SARIS
CHIEF, UNITED STATES DISTRICT JUDGE